*No.13-cr-* ...............

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

VADIM FLESHLER
BEANA BELL
SUPERIOR EMS AMBULANCE COMPANY

INDICTMENT

Counts
**18 U.S.C. § 1349 (conspiracy to commit health care fraud - 1 count)**
**18 U.S.C. § 1035 (false statements in health care matters - 8 counts)**

A true bill.

-----------------------------------------------
Foreman

Filed in open court this ..................... day,

of ............... A.D. 20 ...............

-----------------------------------------------
Clerk

Bail, $ ...............

-----------------------------------------------

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 13-_____ |
| v. | : | DATE FILED: _____ |
| VADIM FLESHLER | : | VIOLATIONS: |
| BEANA BELL | | 18 U.S. C. § 1349 (conspiracy to |
| SUPERIOR EMS AMBULANCE COMPANY | | commit health care fraud – 1 count) |
| | : | 18 U.S.C. § 1035 (false statements |
| | | in health care matters - 8 counts) |
| | : | Notice of forfeiture |

# I N D I C T M E N T

## COUNT ONE

### (Conspiracy)

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

**A.    The Defendants**

1.    SUPERIOR EMS AMBULANCE COMPANY ("SUPERIOR"), with business addresses of 85 Tomlinson Road, Suite C, Huntingdon Valley, Pennsylvania 19006 and 33 Tomlinson Road, Suite 101, Huntingdon Valley, Pennsylvania 19006, was incorporated in the Commonwealth of Pennsylvania on November 23, 2009.

2.    Defendant SUPERIOR operated four ambulances.

3.    Defendant SUPERIOR was owned by its president, defendant BEANA BELL.  Defendant VADIM FLESHLER, who was defendant BELL's husband, was responsible for hiring SUPERIOR ambulance drivers and emergency medical technicians, and transporting

1

patients.  Defendant BELL was responsible for submitting claims to Medicare and bookkeeping functions, among other duties.

**B.**     **The Medicare Program**

4.     Medicare was a federal health insurance program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services.  Medicare helped to pay for reasonable and medically necessary medical services for people aged 65 and older and some persons under 65 who are blind or disabled.  Medicare was divided into several parts, including Part B, outpatient services.

5.     Under Medicare Part B, payment was made to providers of outpatient services.  Such providers included ambulance transportation providers.

6.     CMS contracted with private insurance companies under Part B to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers and suppliers.  Once contracted to process Medicare Part B claims, these private insurance companies were known as Medicare Administrative Contractors ("MAC").  CMS contracted with Highmark Medicare Services ("Highmark"), now Novitas Solutions (Highmark and Novitas Solutions are collectively referred to as "Novitas" in this indictment) to be the MAC to process and pay Medicare Part B claims in the Commonwealth of Pennsylvania.

7.     Novitas was required to process applications from medical providers seeking to enroll in the Medicare program.  Once the application was reviewed and approved, a provider was enrolled and issued a unique provider number.  The provider number was required on all claims submitted by the provider to the carrier for payment.

2

8.     Upon enrollment, providers were issued a provider manual that generally described the requirements to participate as a provider in the Medicare program. Providers also periodically received newsletters advising them of additional requirements for participation and instructions concerning which services were covered or not covered by Medicare and the prerequisites for coverage.

C.     **Payment for Medicare Claims to Providers**

9.     Under regulations promulgated by Medicare, providers and suppliers of Medicare Part B services were required to submit, within one year from the date of service, claims to the MACs on behalf of Medicare beneficiaries. During this period, providers could file their Medicare Part B claims either electronically or in paper form.

10.     When a provider submitted a claim for payment to Medicare for ambulance transport services, the claim was required to include information such as the beneficiary's name, address, unique identification number, the date and place of service, and the type of services rendered, which were identified by individual codes. The form used by a provider to submit claims was a standard form known in the industry as a Health Care Financing Administration 1500 (HCFA-1500) form or a Center for Medicare and Medicaid Services 1500 (CMS-1500) form.

11.     Providers were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider number was included as a part of each submission.

3

12.     Medicare paid for regularly scheduled, non-emergency transports to certain locations, including dialysis centers, only if either: (a) the beneficiary was bed-confined and it was documented that the beneficiary's condition was such that other methods of transportation were contraindicated (*i.e.*, bed confinement alone was not itself a sufficient basis for such transportation); or (b) the beneficiary's medical condition, regardless of bed-confinement, was such that transportation by ambulance was medically required.  For a beneficiary to be bed-confined, the following criteria were required to be met: (1) the beneficiary was unable to get up from bed without assistance; (2) the beneficiary was unable to "ambulate," and (3) the beneficiary was unable to sit in a chair or wheelchair.

13.     In all cases, CMS required that appropriate documentation be kept on file and, upon request, presented to the carrier.  For example, ambulance service providers were required to create a record for each transport, generally known as a "trip sheet[1]", which memorialized the attendant's observations about the patient's condition that demonstrated that ambulance transport was medically necessary.  Medicare also required ambulance providers to obtain, prior to transport, a physician's written order certifying the need for an ambulance for scheduled non-emergency transports.  A physician's order was referred to as a Physician's Medical Necessity Certification ("PMNC") or Physician Certification Statement ("PCS").  CMS made clear that neither the presence nor absence of a signed physician's order for an ambulance transport proved (or disproved) whether the transport was medically necessary.  The ambulance service had to meet all program coverage criteria in order for payment to be made.

---

[1] "Trip sheets" were also referred to as "patient care reports" and "run sheets".

4

14.     Medicare reimbursement to providers was made by either an electronic funds transfer ("EFT") or by check payable to the provider and delivered by U.S. mail. SUPERIOR received its payments from Medicare by check and by EFT.

15.     EFTs to SUPERIOR were made by Novitas, on behalf of Medicare, to a TD Bank account that was titled to SUPERIOR and which listed defendants VADIM FLESHLER and BEANA BELL as authorized signers.  Novitas mailed checks payable to SUPERIOR to PO Box 52207, Philadelphia, Pennsylvania 19115.  Defendants FLESHLER and BELL regularly accessed PO Box 52207.

### The Conspiracy

16.     From in or about September 2010 through in or about August 2013, in the Eastern District of Pennsylvania, defendants

**VADIM FLESHLER**
**BEANA BELL**
**and**
**SUPERIOR EMS AMBULANCE COMPANY**

conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and willfully execute a scheme to defraud the Medicare health benefit program, and to obtain money and property of Medicare by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by submitting and causing to be submitted fraudulent health care insurance claims, in violation of Title 18, United States Code Section 1347.

### Manner and Means

17.     It was part of the conspiracy that defendants VADIM FLESHLER,

5

BEANA BELL, and SUPERIOR transported by ambulance, or directed other SUPERIOR employees to transport by ambulance, patients who could walk or be safely transported by other means, falsely representing to Medicare that these patients required transportation by ambulance.

18.     It was further part of the scheme to target and recruit patients who attend dialysis treatment, which was typically required three times per week, thereby allowing SUPERIOR to bill extensively for these patients.

19.     Ambulatory patients were directed to get onto a stretcher when the patients were able to walk or be moved by wheelchair.  Defendant VADIM FLESHLER also would transport patients to and from dialysis in his personal automobile.

20.     Defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR, submitted, or caused to be submitted, fraudulent claims to Medicare for medically unnecessary ambulance services.

21.     Defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR employees acting at their direction, falsified "trip sheets" by causing those documents to reflect that patients needed to be transported by stretcher and that the patient required continuous medical monitoring during transport.  In fact, patients often walked to the ambulance and no medical monitoring of any kind was performed during the trip.

22.     Defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR paid and facilitated the payment of illegal kickbacks, which ranged from $100 to $500 per month on average, and made up-front cash payments of $1,500 or more to induce patients to be transported by SUPERIOR, even though transport by ambulance was not medically necessary.

6

23.     Defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR provided patients completely free ambulance transport in order to induce them to use SUPERIOR.  The defendants did not collect co-payments from patients even though it was required by Medicare.

24.     As a result of this fraudulent scheme, defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR submitted, or caused to be submitted, approximately $4.4 million in fraudulent claims to Medicare and caused Medicare to incur losses of approximately more than $2.3 million.

## Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendants VADIM FLESHLER, BEANA BELL, and SUPERIOR committed the following overt acts, among others, in the Eastern District of Pennsylvania:

1.     From in or about September 2010 through in or about August 2013, defendant VADIM FLESHLER transported by SUPERIOR ambulance patients for whom ambulance transport was medically unnecessary and falsified "trip sheets" related to patient transport.

2.     From in or about September 2010 through in or about August 2013, defendant BEANA BELL submitted fraudulent claims to Medicare for SUPERIOR and falsified "trip sheets" related to patient transport.

3.    From in or about September 2010 through in or about August 2013,

defendant SUPERIOR caused fraudulent insurance claims to be submitted to Medicare for each

of the patients identified by initials below, among others, on the approximate date listed below,

among others, for ambulance services that were not medically necessary:

| Patient Initials | Approximate Date of Transportation | Approximate Claim Amount | Approximate Payment Date | Health Care Benefit Program |
|---|---|---|---|---|
| KB | 04/11/2012 | $840 | 04/18/2012 | Medicare |
| KH | 12/02/2010 | $860 | 01/23/2011 | Medicare |
| JK | 02/27/2012 | $860 | 03/01/2012 | Medicare |
| WL | 04/11/2012 | $840 | 04/18/2012 | Medicare |
| AW | 10/17/2011 | $820 | 11/03/2011 | Medicare |
| LW | 05/17/2013 | $820 | 05/25/2013 | Medicare |

All in violation of Title 18, United States Code, Section 1349.

8

## COUNTS TWO THROUGH NINE

### (False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1-15 and 17-24 of Count One are incorporated here.

2.      From in or about September 2010 through in or about August 2013, in the Eastern District of Pennsylvania, defendants

**VADIM FLESHLER**
**BEANA BELL**
**and**
**SUPERIOR EMS AMBULANCE COMPANY**

in matters involving the health care benefit programs listed below, falsified, concealed, or covered up, and aided and abetted the falsification, concealment, or covering up, by trick, scheme, or device, a material fact in connection with the delivery of or payment for health care benefits, items, or services, in that the defendants created or caused to be created false documents, that is a "trip sheet," for ambulance transportation provided to the patient identified by initials below, on the approximate dates listed below (each false statement constituting a separate count of this indictment), that concealed and falsely described the true condition of the individual who was transported by ambulance when, in fact, ambulance services were not medically necessary for the patient:

9

| Count | Patient Initials | Approximate Date of False Statement on Trip Sheet |
|---|---|---|
| 2 | JB | 12/05/2011 |
| 3 | NM | 12/07/2011 |
| 4 | LL | 12/08/2011 |
| 5 | AW | 12/14/2011 |
| 6 | EL | 01/06/2012 |
| 7 | WL | 01/23/2012 |
| 8 | CP | 01/24/2012 |
| 9 | DB | 03/07/2012 |

All in violation of Title 18, United States Code, Sections 1035.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1349 set forth in this indictment, defendants:

**VADIM FLESHLER**
**BEANA BELL**
**and**
**SUPERIOR EMS AMBULANCE COMPANY**

shall forfeit to the United States of America any property that constitutes or is derived from gross proceeds traceable to the commission of such offense(s), including, but not limited to:

a.      Money Judgment: A sum of money equal to at least approximately $2,398,403.36 in United States Currency, for which the defendants are jointly and severally liable, and any other accounts and proceeds of these offenses.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court; or

d.      has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

11

All pursuant to Title 18, United States Code, Sections 982(a)(7).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

ZANE DAVID MEMEGER
United States Attorney

12